9th Circuit is now in session. You may be seated. Good morning ladies and gentlemen and welcome students. We'll be having a session with you after our oral arguments. And I want to assure the attorneys that with our hard and fast rules we don't discuss the cases that are being argued with the students afterwards. With that, let's proceed with the first case on the oral argument calendar, which is United States v. Wells. Good morning, Your Honors. May it please the Court, Nadia Ahmed on behalf of the appellant, United States. And Your Honors, I'd ask that we reserve two minutes for my rebuttal this morning. Your Honors, a court must not use a sentencing disparity to create an unwarranted sentencing disparity in the opposite direction. In other words, if the extraordinary and compelling reason for reducing the defendant's sentence is to avoid the unwarranted disparity or discrepancy with the post-First Step Act sentences that would be beat out today, then the modification to that defendant's sentence should extend no further than what would be lawful today. So to reduce the sentence any further, as was done in this case, would create that unwarranted disparity in the opposite direction and impose a more lenient sentence than similarly situated defendants are receiving now. That's exactly what happened here and that's exactly why we appealed this issue and asked this court to find that the district court abuses discretion and to reverse. Essentially, the district court determined that the 107-year sentence was on its own an extraordinary and compelling reason to reduce Mr. Wells' sentence, but the district court didn't reduce it down to what, and that was based entirely on that change, the non-retroactive change in the First Step Act that required a change in the sentencing law. However, the district court did not change that sentence down to what is now lawful, which is 35 years. Instead, the district court changed it down to 10 years, which is not even a third of what defendants similarly situated to Mr. Wells today are receiving. I have a question to back up. I think the district court in this case didn't have the benefit of the Chen decision, right? Your Honor, that is correct, and Chen does shed light to the extent that it shows very clearly that a district court may consider the non-retroactive change in sentencing law as a potential reason to find extraordinary and compelling reasons. Actually, forgive me for interrupting, but I think what Chen says is that that may be considered as one factor among other factors. Your Honor, there's a threshold there in the 3582 statute, right, a threshold. But the district court has — I have a little bit of trouble understanding, of course, this is all 20-20 hindsight, sort of the nature of our job, but I'm not so sure this would have been sorted the same way if the court had had the benefit of the Chen decision. It's a little hard to see which factors he's considering at the threshold level and which factors he was considering under 3553. Your Honor, I concur with the court that the order itself is difficult to determine exactly what the court did, except I think that it's clear when looking at the order as a whole that the sole basis for the court's finding of extraordinary and compelling was that non-retroactive change in the law. Well, you argue that in your briefing. I'm not sure it's right, but I always worry a little bit about putting, especially without the, you know, on a hindsight basis trying to reverse engineer what the district court was thinking about the threshold determination. The way I read the order is that it looks up at the top to parallel the way you presented it in your briefing, that there may have just been one reason. But it circles back at the bottom to talk about a factor that seemed to me to be a threshold issue. Your Honor, it does do that. I think, though, Your Honor, when you look at the whole, including when it starts to look at the 3553 factors on pages ER 9, 10, and 11 of the record, you see that even though in theory it's looking at the factors that would be specific to the defendant, it actually keeps on bringing it back around to the disparity of that sentence. So if you're right about that, wouldn't the proper remedy just to be to remand for the district court to consider in light of Chen, which the district court didn't have the benefit of? Your Honor, that's fair. But here what we're asking the court to clarify is that so Chen says you can look at that change. We submitted to the court that, as the questions pertain today, that there needs to be more than that. There needs to be other things combined with that change. If the court were to send it back, it's complicated in the sense that I understand the court's question. Perhaps that is a way of resolving it and that the court could make clear that there was something else along with it. And I think that would absolutely have to be the case, because here what we have is a record where it's just the change that appears to be the thrust of the reasoning. And in light of that, Your Honors, we would submit that the court could then not have gone below the 35 years. And, Your Honor, we submit when you look at the actual factors that are discussed in the court's order under 3553, again, sending it back, the court could address them in more detail. But here on this record with this order. But, Your Honor, we can't re-sentence. I understand that, Your Honors. I mean, in any event, there has to be a re-sentencing, and the arguments can be made for the other factors as well that could take it down below 35 years, right? Your Honor, there is, as we conceded in our briefing, that courts can go below a mandatory minimum. And that's not here. It wasn't clear that this court made a sufficient record in the order to justify why it was going below 35 years. And that was one thing. And I understand the court is not here today able to say, well, this is what the sentence should be. But I will say that on this record, with the order that was presented, the factors that the court did highlight really don't rise to that extraordinary and compelling level, which is so clearly stated, like, fleshed out in the Ninth Circuit case law. This is something unusual and rare. And here, really, what you have is a defendant who's done. But, counsel, the First Step Act is pretty unusual and rare, too. And we did say that it is a factor that may be considered. So. That's correct, Your Honor. Right. And combined with. . . But the key in Chen, I understand, is that that combined with. . . Yes. Defendant-specific factors. And we would submit, Your Honors, on this record that the defendant's factors that the court cited to were, at best, middling compared to any other. This was the mind-run defendant, the kind of issues the defendant's experienced. The court actually highlighted that he struggled post-incarceration with actually complying and that he did have violations post-incarceration and that that did not bode well for rehabilitation. Additionally, Your Honors, it's ironic in the sense that the order itself noted that the sentence is so egregious that, in essence, it causes the defendant to reject the criminal scheme, the criminal law scheme, and really just be totally recalcitrant to it. And he cited it to the defendant's own letter in the order. And in that letter, the defendant essentially is. . . It's a letter that was issued, written in January of 2022, and the defendant is essentially saying the government's punishing me for stealing less than $2,000, which even that's not factually correct when you look at the underlying record in this case and the PSR. And I only point that out to the court to note that this was not a defendant that really. . . When you look at the Ninth Circuit case law and who stands out, and especially when you look at the defendants that the court was comparing to, we think it's important to note that the comparison was incorrect because he was comparing. . . But I take that point, and you made that point that I think you're arguing there were apples and oranges comparisons in the disparity analysis that the court did. But the change here is extraordinary, isn't it? Your Honor, to go from 107 to 35 is a big difference. It certainly is something that takes it from, as the court had concerns about. . . From a 107-year sentence to a 35-year sentence. That is. . . And those would have been the mandatory minimums, right? That is correct, Your Honor, in this case. Okay. And if the court has no further questions, then I will reserve the rest of my time. Thank you, Your Honor. Good morning. May it please the Court, my name is Elise Henderson, and I'm here on behalf of Dominique Wells. The government concedes compassionate release was appropriate here, but takes issue with the 10-year sentence. There are a few aspects of the government's argument that I want to address, but I want to start with Your Honor's questions about the district court's order. What I believe the district court did, which is allowed under this court's precedent, is relied on the change in law in the First Step Act as an extraordinary and compelling circumstance, combined with the length of Mr. Wells' original sentence, then moved on to Step 2 of the analysis, consideration of the 3553A factors, and used the extraordinary and compelling circumstance as a relevant factor in the 3553 analysis. And other circuits have said that that is appropriate. I'm not sure if this court has addressed that issue yet, but the extraordinary and compelling circumstance is often relevant to the 3553A factors. Isn't it true, though, when you read the district court's order, and of course the court was doing the best it could, it didn't have the benefit of Chen, but it comes right off the page that the district court is very concerned about what it perceives as the injustice of the length of the sentence, especially in light of new changes in the law. And we said in Chen you could consider that, but I don't think we said it could be the be-all and end-all. And I'm concerned that the district court's opinion reads more like the latter here. For the extraordinary and compelling circumstance, the district court relied on that change in law, combined with the effective life sentence that Mr. Wells had received at their original sentence. Right, but isn't that just another way of saying that the district court has a disagreement with the old sentencing scheme? It's not just a disagreement, Your Honor. It's a disagreement combined with the change in law in the First Step Act. Right, but what we said in Chen was that you could consider these non-retroactive changes in combination with other factors particular to the case, to the defendant. And I'm not sure the district court did the latter here. It, of course, didn't have Chen in front of it, but it's hard to read that into this order. So I believe in Chen this court said that the non-retroactive change in law can be an extraordinary and compelling circumstance, said there might be other factors in combination, but did not give examples of what those factors could be, and left it to the district court to decide in its discretion what those factors would be in a particular case? Well, I think Chen said you could consider it. It didn't have to get into the extent to which you could consider non-retroactive changes, but I do think it set an upper limit by saying what we don't mean. We don't mean that this non-retroactive change will just apply to everyone. Otherwise, we're basically just changing the statute ourselves, which we can't do. And it seems to me the logic of the district court's opinion here would likely apply to basically any defendant. So I think it's helpful to look at the Sentencing Commission's new guidance for these types of compassionate release motions. What the Sentencing Commission has said is that a non-retroactive change in law can be an extraordinary and compelling circumstance, so long as there's a gross disparity between the old sentence and the sentence that would apply today, and the defendant has served at least 10 years of his sentence. So under those guidelines that the Sentencing Commission has adopted. What do you think we can do with those? Those may be a sign of where the law may go in the future here, but what do they do as to your client's case? I think that they give some insight into the ways that the Sentencing Commission sees extraordinary and compelling circumstances, and it matches a lot of what this court said in Chen. So the change in law on its own can be an extraordinary and compelling circumstance when there's this gross disparity. So the district court wasn't just saying— Well, I don't think we said that in Chen. That is not how I read Chen. Chen said you're not prohibited from considering this. You can consider it in combination with other factors. I don't think we said it was sufficient, a sufficient extraordinary and compelling circumstance on its own. Chen left that part to the district court and its discretion, what those other factors could be in a particular case. Forgive me for interrupting, but I'm not sure you're really squarely responding to Judge Bress's question. I read your brief and your comments today to go both ways on this, so it would be helpful to me to know. Is it your position that the change in the law, the change in the mandatory minimum alone, can be an extraordinary circumstance?  So if his original sentence had been very close to the sentence that would apply today, perhaps that would not be extraordinary. So we're talking about under the First Step Act, we're talking about the difference between stacking and not stacking. So the disparities are very large. Correct. What's an example of a First Step Act change where there isn't a large disparity? If we're talking about the stacking provision, they're in increments of five years. I believe for that provision, the changes would be significant. At minimum, it would be 20 years for every defendant. But the Sentencing Commission's new guidance is not limited to this stacking change in the First Step Act. The Sentencing Commission's new guidance isn't, I don't think it even becomes operative until November. The district court didn't have that either. Correct. But the district court did not abuse its discretion by relying on the same considerations that the Sentencing Commission has said can be an extraordinary and compelling circumstance. And the government has conceded that the finding of an extraordinary and compelling circumstance was appropriate in this case. The government is not challenging that. I think that's your other argument. For purposes of this case anyway, there may be another case where we need to straighten this out. But it sounds like your argument is in this case because the government has taken the position, and they did in their brief, embraced the notion, basically assuming that the threshold is satisfied, that what they want us to get to is the other issue, which is that on resentencing, considering the 3553 factors, the court abused its discretion by going below the new mandatory minimums. Correct, Your Honor. And there are two aspects that I'll try and quickly address of the government's argument. The first is this proposal for a per se rule that would limit a district court's discretion to go below the mandatory minimum in cases like this. And that rule is not in the statutory language. It's not in any policy guidance from the Sentencing Commission. What the Supreme Court has said most recently in Concepcion is that sort of argument is for Congress to debate and perhaps write into the statute and for the Sentencing Commission. It's not for courts to impose as a per se rule. As an alternative to the per se rule, the government focuses on Mr. Wells' individual circumstances, but the government puts controlling weight on this disparity argument. Instead of addressing the totality of the circumstances here, the district court went through several of the 3553A factors, including Mr. Wells as an individual and the crimes that he committed. And that analysis from the original sentencing, from the resentencing, and from the compassionate release proceedings is missing from the district court's argument. They are not arguing that under the totality of the circumstances, the district court abused its discretion. They're arguing that disparity should have controlled here. But the district court... What extraordinary and compelling personal circumstances do you think Mr. Wells has? Because I understand the disparity in sentencing. That's a real issue. But beyond that, you know, sometimes you see defendants who are either elderly or sick, have some unique family history or family situation. That doesn't seem to be the case here. Well, for the second step of the analysis, the 3553A factors, Mr. Wells' circumstances do not have to be extraordinary and compelling. The standard at the second step... No, I'm talking about the first step, though. So for the first step, the extraordinary and compelling circumstances, that is based on the non-retroactive change in law. So the district court was considering Mr. Wells' circumstances at the second step of the analysis, where it does not have to be extraordinary and compelling. But the district court did point out his criminal history was limited to some misdemeanor convictions where he served jail time, not prison time. His age at the time that he committed these crimes. The letter that the government referenced that was submitted, where Mr. Wells said that he had matured through this process and the changes that he had gone through between the original sentencing and the compassionate release proceedings. And the work that Mr. Wells had been putting in in prison, even though he was facing an effective life sentence. But some of those, I mean, if the argument is that the non-retroactive change in law was the only extraordinary and compelling circumstance, that, I think, clearly runs afoul of Chen. There has to be something else particular to the individual defendant as part of that front-end analysis. Otherwise, the effect of this is that a non-retroactive change in law applies to everyone. Other circuits that have issued opinions that go the same way Chen does, as those decisions are being applied, the type of cases where this stacking change in law has been the extraordinary and compelling circumstance, it's generally combined with the length of the sentence that the district court had originally imposed. So, for example, the 107-year sentence is extraordinary for Mr. Wells, not just because of the difference between that and 35, but because of his personal circumstances being sent to prison with a life sentence in his 20s with no previous prison time and what he had done in prison with that life sentence. Thank you, Counsel. Thank you. We'll hear a rebuttal. Thank you, Your Honors. I want to focus on the prospective policy statement that we'll issue in November. If the Court is correct, it's not binding until November. To the extent, however, that it would be guidance for the district court on remand, or for this Court in considering this question generally, I would note that that actual policy, as of now, this defendant wouldn't even be able to avail of the compassionate release statute because you have to have served at least 10 years according to that policy statement. But can I back up and ask you to address the point we were just discussing a minute ago? In this particular case, I think that there's a threshold, no question. But in this particular case, that doesn't seem to be the focus of your briefing at all. It seemed to me that you were conceding just for purposes of this case and asking us to reach the other issue, which really had to do with the Court's discretion to go below the current mandatory minimums. Your Honor, that's correct. I'll just note that with respect to that, the point is that the Court, yes, we believe, as the Court has indicated, 10 requires more. That, the change in the law, plus something specific to the defendant. Here, there wasn't something sufficiently specific to the defendant because the Court didn't do the right thing. Why do you say that when he referenced his low criminal history? He talked about his rehabilitation in prison, and he spoke to the fact that he was given a life sentence. That is specific to the defendant. Now, would we have done something differently? Maybe, but that's not how we judge district court actions under an abusive discretion standard. So why do you keep saying he only relied on the First Step Act? In terms of reaching the decision that there was an extraordinary and compelling reason we would submit to the Court in the order, that's what it seemed. But, Your Honor, we would also— Forgive me. I know I'm interrupting, but earlier when I asked you that question, I think you acknowledged that up at the top of his order it sounds like that, but he circles back at the bottom. Your Honor, there is a section in the order where he does discuss 3553, and to go to both questions, there is some analysis. We would say, though, Your Honor, that he used that analysis in conducting the incorrect comparison, which is the apples to oranges versus apples to apples because— Right, but if he finally considers those factors, what's the difference under Chen? Your Honor— If, in fact, he is considering factors beyond the First Step Act, he's complied with Chen, even though you would like to have had him do that in a different order, in the opinion. But if he does that, what's the difference? Why isn't that a best harmless error? Well, here, Your Honor, we would submit, A, that that's not quite what he did. He discusses the factors, but he really doesn't reach clear conclusions as to why they are— he never says these are compelling and extraordinary reasons to get below what is now mandatory minimum, which is really what we're saying is that, yes, there is a great difference between 107 and 35, but this Court needed to talk about why he wanted to go below 35, and that's what we would want if the Court were to remand, is that the Court would have to make findings as to why— Are you saying we can't, as a matter—District Court can't, as a matter of law, consider criminal history, rehabilitation, the fact that he's likely to die in prison on a life sentence? That you cannot consider that? Your Honor, we would not say that the Court cannot consider that. So he does go beyond what—he is complying with Chen, maybe not in a straightforward way, but he's considering factors beyond the First Step Act. Your Honor, I think that if the Court were to conclude that the Court complied with Chen, we would submit that the Court abused its discretion, and it's clearly erroneous because when you look at those factual findings, those are not findings that put this defendant in that extraordinary and rare circumstance in which this Court has found compassionate release was appropriate, or district courts in this case. Well, I mean, what troubles me is that we generally give district courts wide discretion in sentencing and in compassionate release, and often the situation is reversed, that they feel that we get an appeal that says, oh, look, the district court didn't consider all these factors in our favor in reaching its compassionate release decision. And, you know, when I see those, I say, well, I might have done it differently, but that's the structure, is that we defer to the district court. So, I mean, my conundrum is if we're turning the abuse of discretion standard on its head and saying, okay, you can't go below the mandatory minimum, that seems wrong to me. Your Honor, in response to that, I would say that I think what we're trying to say with respect to the application of Chen here is that the only to the extent we're looking at a non-retroactive application of change in sentencing law that has a profound effect on a potential sentence, and we're comparing what he got then versus what he got now, that we think that the 3553 analysis needs to be tailored to the extent the court intends to go below the lawful sentence now, that he would have gotten having those five 924C convictions, that the court needs to make a record tailored to why the 35 years is not sufficient, and that's really what's lacking here. And so to go to that, to Your Honor's point, when he made that analysis, he kept talking about those factors in relation to that life sentence, essentially, but really the question is why go below the lawful 35-year sentence? The court never says why 35 years wasn't sufficient to address or to modify down to 35 years, which is really, at the end of the day, the only lawful sentence he could have gotten had he been sentenced now outside of a compassionate release. But, you know, I think the district court was also trying to achieve consistency, which is the whole point of the sentencing guidelines, by saying here are these other cases in our district where similarly situated defendants have gotten significantly less sentences. And that's exactly, Your Honor, where we would say that the court made the wrong comparison. Yeah, but I think it's a fair thing to do in the sense of trying to reach a consistent approach district by district of how they're treating similarly situated defendants. Now, I agree with you. That can't be the only factor. But I think he was at least trying to achieve consistency within the district, which is not a bad thing. Your Honor, I respect that, and I don't say that the district court wasn't trying to get it right. I think the district court did care to get it right and to do justice to this defendant. But the problem was that it just on its face doesn't make logical sense that you could compare Wells, who was sentenced to the mandatory minimum, 924 C's, to two defendants who were given, who were found to have exceptional circumstances warranting compassionate release modification. So already they're outliers that had specific circumstances to their sentence. That's with respect to the two Judge Borden cases that he cites. Except in this case, again, I'm not sure your brief really challenged the threshold determination here, because you're asking us to make a different ruling. But anyway, I didn't mean to interrupt. So you think that those are the, now you're speaking of the two defendants within the same district who had been given reduction, as opposed to this person's, Mr. Wells' co-defendants? Well, both, your Honor. I would say both of those comparisons were flawed. The co-defendants clearly pled pursuant to written plea agreements. They had cooperated. They had minimal rules. They were only in the last two robberies. Mr. Wells started the series, ended the series. And, in fact, when you look at the PSR, paragraphs 30 through 50, you'll see that he increased his conduct with every robbery. He went from robbing and taking money to robbing and taking cigarettes, robbing and taking jewelry. But if you're going to make that argument at the 3553 level, then you really are asking us to take on the abusive discussion standard as opposed to the threshold. So I'm a little confused about where you're aiming here. I understand. Your Honor, we would submit that the district court did not have the benefit of 10, but did not apply, did not properly look at what the threshold was, did not properly do a threshold analysis. That's first. We would also submit that in that threshold analysis, in the comparison part in determining that there is a compelling and extraordinary reason to modify, that the comparison has to be apples to apples. And we would just, and I know I've taken all of the court's time, but going back to the modification to the sentencing policy, I would just note that counsel is correct as to what counsel said, but the very last part of the modification to the policy that will go into effect in November of this year says, and after full consideration of the defendant's individual circumstances, sorry, Your Honor, backing up, the comparison should be when such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. So even the policy, which will become binding in November, says you look at Wells when he was sentenced versus Wells as he would be sentenced today, not Wells versus his very different co-defendants. But may I ask a question? Refresh my memory, did they ever make a plea offer to him? Yes, Your Honor, and it's actually in the transcript. What was the plea offer? Your Honor, I'm going off of only what was in the record, and what was in the record was in the transcript of the original sentencing hearing, and I can give the court that citation. The government noted that the court expressed extreme discomfort repeatedly with this sentence, and the government said, Your Honor, this is why we made plea offers, and I believe it's in plural, Your Honor, because I believe he had multiple offers. What were those offers? Your Honor, it doesn't say in the record, and I wouldn't. But my guess is the offer was not 112 years. Your Honor, that's correct. Or 35 years. He was probably along the line with the co-defendants, which were four years. And, Your Honor, I'm happy to pull up that exact quotation. I can look it up. It is in there that the court is expressing discomfort with this perceived life sentence, and that is when the government attorney says, Your Honor, this is. . . Only the life sentence, perceived life sentence, who lived to be 117 years. That's fair, Your Honor. But the court's discomfort with this huge sentence compared to the co-defendants, I believe that's the context, which is when the government attorney on the record says, Your Honor, this is exactly why we made plea offers. Right. And I believe it was. . . So there is a sense that he's getting punished for not accepting the plea. Not really, Your Honor. I think that the plea offer, there's ways in which he could have resolved it with a plea where he would have been below the 924C mandatory minimums. But having gone to trial and being convicted of those, nobody had the discretion at that point to do anything different because Congress has issued the statement. I take your point. Our questions have taken over your time, but thank you for responding. Thank you, Your Honor. I thank both of you for your arguments today. The case has started to be submitted for decision.
judges: THOMAS, CHRISTEN, BRESS